UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL S. GOLDSTEIN,

        Plaintiff,

   v.

COUNCIL ON ACCREDITATION FOR                          Case No.: 7:18-cv-2507 (KMK)
CHILDREN AND FAMILY SERVICES, INC. and
RICHARD KLARBERG, ITS PRESIDENT AND
CHIEF EXECUTIVE OFFICER,

        Defendants.
-----------------------------------------------------------------X


### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Russell M. Yankwitt
Craig M. Cepler
YANKWITT LLP
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.: (914) 686-1500
Fax: (914) 801-5930
*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ...................................................................................... 3

   I.    BACKGROUND ON COA.................................................................................. 3

   II.   COA'S INVESTIGATION OF COMPLAINTS AGAINST
       PLAINTIFF AND IMPOSITION OF ADVERSE ACTION............................................ 5

       A.   Complaint Against Plaintiff ...................................................................... 6

       B.   Plaintiff's Response to COA's Proposed Adverse Action........................................ 9

       C.   COA Imposes Adverse Action against Plaintiff ...................................... 10

   III.  THE INSTANT ACTION ............................................................................ 12

LEGAL ARGUMENTS............................................................................................ 12

   I.    STANDARD OF REVIEW......................................................................... 12

   II.   PLAINTIFF CANNOT DEMONSTRATE IRREPARABLE HARM ........................... 12

   III.  PLAINTIFF CANNOT SHOW A LIKELIHOOD
       OF SUCCESS ON THE MERITS ............................................................ 15

   IV.  THE EQUITIES DO NOT TIP IN FAVOR OF PLAINTIFF ...................................... 18

CONCLUSION....................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Ass'n of Proprietary Colleges v. Duncan*,
  107 F. Supp. 3d 332 (S.D.N.Y. 2015)......................................................................15

*Banks v. Yokemick*,
  214 F. Supp. 2d 401 (S.D.N.Y. 2002) ...................................................................... 16

*Bechtel v. Admin. Review Bd.*,
  710 F.3d 443 (2d Cir. 2013).....................................................................................15

*Boatmen v. Gutierrez*,
  429 F. Supp. 2d 543 (E.D.N.Y. 2006) ..................................................................... 15

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010)....................................................................................... 12

*Cty. Of Westchester v. U.S. Dep't of Hous. & Urban Dev.*,
  802 F.3d 413 (2d Cir. 2015)..................................................................................... 15

*Fed. Power Comm'n v. Fla. Power & Light Co.*,
  404 U.S. 453 (1972).................................................................................................. 17

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*,
  175 F.3d 144 (2d Cir. 1999)..................................................................................... 13

*Fund for Animals v. Kempthorne*,
  538 F.3d 124 (2d Cir. 2008)..................................................................................... 17

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007)....................................................................................... 12

*Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*,
  2012 WL 137851 (E.D. Tenn. Jan. 18, 2012)......................................................... 19

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*,
  43 F.3d 922 (4th Cir. 1995) ..................................................................................... 19

*Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*,
  879 F.3d 1202 (D.C. Cir. 2018) ..........................................................................17-18

*Smolen v. Dildine*,
  2011 WL 6030112 (W.D.N.Y. Dec. 5, 2011) ......................................................... 13

*Troy Corp. v. Browner*,
  120 F.3d 277 (D.C. Cir. 1997) ................................................................................. 18

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)...................................................................................................... 14

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*,
  339 F.3d 101 (2d Cir. 2003)..................................................................................... 13

**Statutes**

5 U.S.C. § 706..................................................................................................................15

42 U.S.C. § 14901............................................................................................................. 3

42 U.S.C. § 14922................................................................................................ 4, 12, 15

**Regulations**

22 C.F.R. Part 96.............................................................................................................. 3

22 C.F.R. § 96.2................................................................................................................ 5

22 C.F.R. § 96.27......................................................................................................... 4, 17

22 C.F.R. § 96.32.............................................................................................................. 8

22 C.F.R. § 96.44.............................................................................................................. 8

22 C.F.R. § 94.46......................................................................................................... 8, 18

22 C.F.R. § 94.49.................................................................................................... 8, 18, 20

22 C.F.R. § 96.75................................................................................................ 4, 9, 16, 19

22 C.F.R. § 96.76.................................................................................................... 5, 9, 16

22 C.F.R. § 96.77............................................................................................................ 11

71 Fed. Reg. 8064............................................................................................................ 4

Defendants Council on Accreditation for Children and Family Services, Inc. ("COA") and Richard Klarberg ("Klarberg," and together, "Defendants") respectfully submit this Memorandum of Law in opposition to plaintiff Michael S. Goldstein's ("Plaintiff") Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction ("OTSC").

## PRELIMINARY STATEMENT

This case arises from COA's role as an approved accrediting entity ("AAE") for adoption service providers ("ASPs") working with international adoptions.  Plaintiff is an ASP, approved by COA.  In its role as an AAE, COA reviewed a complaint made by a former client of Plaintiff and then, in exercise of its sound and mandated discretion, imposed a statutorily authorized adverse action against Plaintiff, including a ten-day suspension of Plaintiff's authorization to work on international adoptions and a requirement that he notify his clients of the adverse action.

Now pending before the Court is Plaintiff's OTSC, by which he seeks a preliminary injunction preventing COA from imposing on Plaintiff any adverse action, including a suspension of his approval to work on international adoptions, for his admitted violations of the federal regulations governing his work as an ASP.  In his papers, Plaintiff does not dispute that he failed to comply with the relevant regulations nor does he assert that the ten-day suspension was inconsistent with his admitted regulatory violations or inconsistent with what similar ASPs have faced for similar violations.  Instead, Plaintiff asserts COA's actions were arbitrary and capricious and therefore should be overturned by this Court based on Plaintiff's unsubstantiated and erroneous claims that he has rectified the identified deficiencies and that doing so pre-empts COA's adverse action.

To obtain a preliminary injunction, Plaintiff will have to show he will suffer irreparable harm from the adverse action, a likelihood of success on the merits of his challenge and that the balance of equities tips in his favor.  Plaintiff will not be able to meet any of those requirements.

First, as to irreparable harm, Plaintiff alleges that if his suspension proceeds, he will have to cease all adoption operations, requiring him to transfer his pending cases, and that any public statements and reports about the suspension will cause injury to his business and reputation.  He also asserts that if the suspension is put into place, he *may* have to obtain new approval from the countries in which he conducts his adoption practice, including Bangladesh, the situs of the instant complaint.

The evidence does not support any of these arguments.  Specifically, the suspension is for the longer of ten days or until COA (or its successor entity)[1] confirms that Plaintiff is in compliance with all regulatory requirements.  Plaintiff is explicitly *not* required to transfer cases to other providers, though Plaintiff should inform prospective clients of the option to transfer their cases.  Further, although Plaintiff paints himself as always maintaining an honest and compliant practice, Plaintiff is not being candid with the Court as he was previously suspended for failing to comply with regulatory requirements, and information about that prior suspension is publicly available through the United States Department of State's ("State Department") website.  In light of the brevity of the punishment in this case and Plaintiff's prior suspension, there is no irreparable harm from this subsequent short suspension imposed by COA.

---

[1]     By letter dated October 6, 2017, COA advised the State Department of its intention to withdraw as an AAE. (Declaration of Richard Klarberg, Esq., in Opposition to Plaintiff's Order to Show Cause ("Klarberg Decl.") ¶ 8.) As of March 31, 2018, COA has been replaced by an unrelated entity, the Intercountry Adoption and Accreditation Maintenance Entity, Inc. ("IAAME").  (*Id*.)  Despite this change, COA is responsible for its suspension of Plaintiff and thus defending this action, while IAAME will confirm when the suspension should be lifted if and when Plaintiff has demonstrated compliance with the regulations.  (*Id*.)

Second, Plaintiff's papers do not demonstrate any likelihood of success on the merits. Plaintiff concedes he failed to comply with the regulatory requirements and thus cannot show that the adverse action was arbitrary and capricious or inconsistent with what others have received for similar conduct. Further, COA is mandated to impose an adverse action when it finds, as it did here, any violations, regardless of whether the ASP has subsequently corrected those violations.

Third, the balance of equities favors COA. COA is mandated by the State Department to enforce those federal laws and regulations that are intended to protect the intercountry adopting public, including prospective adoptive parents and birth children in their country of origin, and to prevent human trafficking. Where, as here, there has been an admitted violation of the regulations, COA must be permitted to impose adverse action and uphold those laws. If COA is not permitted to impose the adverse action, (a) there will likely be a loss of trust in a regulatory process that is of great public importance; (b) a party who violated the regulations will be able to avoid the consequences of his actions; and (c) the health and safety of children may be at risk. Accordingly, the equities support COA's actions.

## FACTUAL BACKGROUND

## I.   BACKGROUND ON COA

This case arises out of COA's role as an AAE as designated by the State Department, pursuant to a Memorandum of Agreement originally entered on July 12, 2006, and subsequently reauthorized on July 12, 2011, and July 11, 2016, to oversee and accredit ASPs pursuant to the Intercountry Adoption Act of 2000, 42 U.S.C. § 14901 *et seq.* (the "IAA"), the Intercountry Adoption Universal Accreditation Act of 2012 (the "UAA") and related regulations set forth in 22 C.F.R. Part 96. (Klarberg Decl. at ¶ 3.) Congress passed the IAA and the UAA (together, the "Acts") to comply with The Hague Convention on the Protection of Children and Co-operation

in Respect of Intercountry Adoption (the "Convention") and to extend the protections of the Convention to orphans who are being adopted from countries that are not party to the Convention.  (*Id.*, <u>Exhibit A</u>, Notice, United States Department of State, Office of Children's Issues, "The Universal Accreditation Act of 2012 becomes Law" (Jan. 18, 2013).)  Accordingly, COA oversees the activities of ASPs regardless of whether an international adoption involves a country which is a signatory to the Convention.  (*Id.* ¶ 5 & Ex. A.)

Defendant Klarberg is COA's President and CEO, and therefore charged with enforcing the relevant statutes and regulations on behalf of COA.  (Klarberg Decl. ¶¶ 1 & 6.)

As an AAE, COA is charged with ensuring ASPs are in compliance with the Acts and federal regulations.  (*Id.* ¶ 7.)  When an ASP is in breach of a regulation, federal law mandates COA take adverse action.  *See* 42 U.S.C. § 14922; 22 C.F.R. § 96.75 ("The accrediting entity *must* take adverse action when it determines that an accredited agency or approved person may not maintain accreditation or approval as provided in § 96.27.") (emphasis added).  In such case, COA determines what adverse action is appropriate.  *See* 71 Fed. Reg. 8064, 8066 ("The accrediting entities will have discretion to determine which adverse action is appropriate in light of the particular standards in subpart F (or N) with which the agency or person is not in compliance.").  Pursuant to these regulations, adverse actions may include suspension or cancellation of the ASP's accreditation or approval[2] to work on international adoptions.  *See* 22 C.F.R. § 96.75.  COA's decision as to the appropriateness of an adverse action must be based on "the seriousness and type of violation and on the extent to which the accredited agency or

---

[2]     Technically, because Plaintiff is not a non-profit organization, he is *approved* as an ASP by the COA. (Klarberg Decl. ¶ 10.)  On the other hand, ASPs designated as non-profit corporations are *accredited* by COA.  (*Id.*) The distinction between approved and accredited ASPs does not affect the analysis in this case.

approved person has corrected or failed to correct deficiencies of which it has been previously informed." 22 C.F.R. § 96.76(a).

Upon receipt of a complaint, COA's staff conducts a review of the merits of the claim. (Klarberg Decl. ¶ 13.)  The staff then presents its findings to COA's Compliance Review Committee, which determines whether the facts substantiate the validity of the complaint against the ASP.  (*Id.* ¶ 14.)  If appropriate, the Compliance Review Committee proposes an adverse action based on a published schedule listing regulatory violations and recommended adverse actions based on those deficiencies.  (*Id.* ¶ 15 & Exhibit B, The Hague Accreditation and Approval Policies & Procedures Manual (the "Manual") at 45-46.)  By relying on the schedule, COA can ensure the proposed adverse action is consistent with other cases and in compliance with 22 C.F.R. § 96.76(a).  (*Id.* ¶ 16.)

Upon reaching a preliminary conclusion, COA's Special Committee conducts a second review of the case file to determine whether it concurs with the preliminary findings and proposed adverse action.  (*Id.* ¶ 17.)  If the Special Committee does concur, the ASP is then informed in writing of the proposed action and the deficiencies that prompted the action.  (*Id.* ¶ 18.)  *See* 22 C.F.R. § 96.76(a).

Before imposing an adverse action, COA may, in its discretion, provide the ASP with an opportunity to appeal the decision and demonstrate that the adverse action would be unwarranted before the adverse action is imposed.  (Klarberg Decl. ¶ 17.)  *See* 22 C.F.R. § 96.76(b).

## II.      COA'S INVESTIGATION OF COMPLAINTS AGAINST PLAINTIFF AND IMPOSITION OF ADVERSE ACTION

Plaintiff is an ASP, as defined by 22 C.F.R. § 96.2, and is approved by COA to work on international adoptions.  (Klarberg Decl. ¶ 20.)  Plaintiff was originally granted approval by

COA on April 1, 2008, and his present approval will expire on March 31, 2021, unless he applies for and is granted renewal.  (*Id*. ¶ 21.)

Contrary to Plaintiff's representations to the Court of that he "has always maintained an ethical, honest and transparent adoption practice," (Memorandum of Law of Plaintiff, Michael S. Goldstein, in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Pl. Br.") at 8), a prior complaint was filed against him in October 2013.  (*See* Klarberg Decl. ¶ 22 & Exhibit C, COA Hague Accreditation and Approval, Substantiated Complaint and Adverse Action Report, Last Updated March 2018, at 246.)  COA reviewed that complaint and suspended Plaintiff effective May 21, 2016.  (*Id*. ¶ 23 & Ex. C at 247.)  Plaintiff's status as an approved ASP was restored on June 14, 2016.  (*Id*. ¶ 24 & Ex. C at 247.)  Information about this suspension is publicly available through the State Department website.  (Declaration of Craig M. Cepler, Esq., in Opposition to Plaintiff's Order to Show Cause ("Cepler Decl.") at ¶¶ 2-3 (referencing *Adoption Service Provider Search*, at

https://travel.state.gov/content/travel/en/Intercountry-Adoption/about-adoption-service-providers/adoption-service-provider-search.html (April 4, 2018), linking to

https://coa.my.salesforce.com/sfc/p/#300000000aAUSKW3KgJaQWFxUBlC4qqyq7a7W9E (April 4, 2018)).)

### A.    Complaint Against Plaintiff

In August 2015, Adnan Alam (referred to as "Mr. C" by Plaintiff) ("Alam"), with his wife, Gail (together the "Alams"), retained Plaintiff to assist them with the adoption of a child from Bangladesh.  (Verified Complaint ("Complaint") ¶ 38.)  Before the adoption was complete, the Alams discharged Plaintiff, claiming Plaintiff had made too many mistakes and was not sufficiently familiar with the adoption process in Bangladesh.  (Klarberg Decl. ¶ 25 & Exhibit D,

Council on Accreditation, Hague Accreditation/Approval, Compliance Review Report, dated

September 8, 2017 ("Compliance Review Report"), at Exhibit 30.)

On October 5, 2016, after discharging Plaintiff, Alam filed a complaint against Plaintiff

in the State Department's Complaint Registry regarding his actions during the adoption process.

(*See* Klarberg Decl. ¶ 26; Compliance Review Report, Exhibit 21, dated October 5, 2016).)

Specifically, Alam asserted the following four claims against Plaintiff:

> 1.      Michael Goldstein fraudulently induced my wife and I to
> sign a Retainer Agreement and send him a check for $9,000 by
> falsely claiming to have completed two international adoptions from
> Bangladesh.  Mr. Goldstein told my wife and I that he had completed
> two adoptions from Bangladesh to the United States and had worked
> with two different lawyers in Bangladesh during the course of those
> adoptions.

> 2.      Mr. Goldstein misrepresented to us the date after which he
> could help us with our adoption following the temporary suspension
> of his Hague approval by the Council on Accreditation.

> 3.      Michael Goldstein unilaterally terminated the attorney-client
> relationship early and by doing so enriched himself by receiving the
> minimum legal fee versus the value of work already performed.

> 4.      Because of Mr. Goldstein's inexperience in Bangladesh
> adoptions, Mr. Alam paid $9,000 to Mr. Goldstein to only utilize his
> Hague accreditation.

(Compliance Review Report at 2.)

Upon receipt of Alam's complaint, COA proceeded to conduct a comprehensive review,

which included an interview of Alam on February 27, 2017, and a review of documents received

from Alam and Plaintiff.  (Klarberg Decl. ¶ 27; Compliance Review Report at 2.)

Based on COA's review of these materials, it found as follows:

Allegation #1.  COA found that although Plaintiff had incorrectly told Alam that he had

previously worked on adoptions involving Bangladesh, this misstatement was determined to

have been inadvertent and was corrected.  Therefore, COA found the claim that Plaintiff

fraudulently induced Alam to retain Plaintiff by falsely telling Alam that he had previously worked on adoptions involving children from Bangladesh did not warrant any adverse action. (*Id.* at 2-5.)

Allegation #2.  COA determined that Plaintiff had misrepresented the details of his May 2016 suspension to the Alams but determined that Plaintiff exhibited no fraudulent intent. Therefore, COA found that this claim did not warrant an adverse action.  (*Id.* at 6-8.)

Allegation #3.  COA determined that Plaintiff had failed to comply with the relevant regulations as to his retainer agreement insofar as the agreement was unclear as to what services required extra fees.  COA concluded that Plaintiff had voluntarily corrected the issues with his retainer agreement and therefore declined to take an adverse action.  (*Id.* at 8-13.)

Allegation #4.  After its investigation, COA made six findings as to the allegation that because Plaintiff had no experience in Bangladesh, Alam had basically paid Plaintiff $9,000 to utilize his Hague accreditation.  As to two of those findings, COA found no adverse action was appropriate based on the low level of the regulatory violation.  As to the other four findings:

1. COA found that Plaintiff failed to *implement* a service plan for the Alams pursuant to 22 C.F.R. § 96.44(a).

2. COA found that Plaintiff failed to supervise the Bangladeshi orphanage insofar as he did not communicate with it to monitor the care of the child, and Plaintiff did not request medical information from the orphanage.  COA concluded that Plaintiff's failings on this issue was a result of this adoption being parent-initiated in a country in which Plaintiff did not have a program.

3. COA found that Plaintiff failed to monitor, oversee and vet the Bangladeshi orphanage and did not have any direct communications with the orphanage. These deficiencies violated 22 C.F.R. §§ 96.46(a), 96.46(b) and 96.32(d).

4. Finally, COA found that Plaintiff did not ensure that the Alams received all required medical and social information, even in this parent-initiated adoption, in violation of 22 C.F.R. §§ 96.49(a), 96.49(d), 96.49(f) and 96.49(g).  With respect to this finding, COA specifically noted that the "health and safety of persons may be at risk" by Plaintiff's violations.

(*Id.* at 13-22.)

Following these preliminary findings by the Compliance Review Committee, which were substantiated by COA's Special Committee, in accordance with 22 C.F.R. § 96.76(a), on February 7, 2018, COA issued a Notice of Review Results setting forth COA's findings on Alam's allegations as well as additional allegations identified by COA during its review.  (*See* Klarberg Decl. ¶ 28 & Exhibit E, Notice of Review Results ("February 7 Notice").)  *See also* 22 C.F.R. §§ 96.75(a), 96.76(a).  At the same time, COA also issued a Notice of Deficiencies and Adverse Action informing Plaintiff of its decision to suspend his Convention approval for at least ten days, which prevented Plaintiff from working on any international adoptions, and alerting Plaintiff to his rights for review of COA's conclusions.  (*See id.* ¶ 29 & Exhibit F, Notice of Deficiencies and Adverse Action, at 5.)  The ten-day suspension was consistent with those set forth in the Manual.  (Klarberg Decl. ¶ 28 & Ex. B at 45-46.)

### B.     Plaintiff's Response to COA's Proposed Adverse Action

On March 8, 2018, Plaintiff, through counsel, submitted a petition to COA seeking to overturn the proposed adverse action, which included a declaration by Plaintiff made under penalty of perjury.  (Klarberg Decl. ¶ 34; Exhibit G, Letter from Shawn T. Richards to Richard Klarberg, dated March 8, 2018 ("Petition"), at 1-2; Exhibit H, Declaration of Michael S. Goldstein, dated March 8, 2018 ("Decl.").)  In his Petition, Plaintiff argued that (1) the ten-day suspension was not warranted because the identified deficiencies were not reflective of his practice, (2) the admitted non-compliance stemmed from a change in the requirements for ASPs' review of foreign service providers ("FSPs"), and (3) he had subsequently rectified the admitted deficiencies.  (*See* Petition at 1-2.)

Further, Plaintiff denied that Alam's complaints related to "any alleged unethical behavior." (Decl. ¶ 10.) Plaintiff also claimed that the Alam case was "unique," "not representative of [his] general practice" and an "aberration." (*Id.* ¶ 11.) Further, Plaintiff claimed the blame for any violations was due to this being a "parent-initiated adoption" and Alam's "very controlling" and "manipulative" behavior. (*Id.* ¶¶ 12-13.) Plaintiff conceded that, as a result of the Alams' involvement, he was not in communication with the FSPs in Bangladesh. (*Id.* ¶¶ 13, 15.) Plaintiff further conceded that he did not follow his own general practices in this case and failed to provide proper oversight in the Alam case. (*Id*. ¶ 19 ("My general practice in all other cases is to have control and supervise at all times throughout the process. This one case was an anomaly and is simply not representative of my general practice.").)

### C.    COA Imposes Adverse Action against Plaintiff

COA ultimately rejected Plaintiff's challenge to his suspension and, by notice dated March 16, 2018 ("March 16 Notice"), informed Plaintiff of the adverse action to be imposed and instructed him as to the specific required corrective action needed to be taken (and approved by COA) before the suspension would be lifted. (Klarberg Decl. ¶ 38 & Exhibit I, Letter from Klarberg to Plaintiff, dated March 16, 2018.) In addition, by email on March 16 to which the March 16 Notice was attached, COA informed Plaintiff that the corrective action purportedly taken by him in response to the March 16 Notice was "not sufficient, nor does it change the seriousness of the complaint and findings." (Klarberg Decl. ¶ 39 & Exhibit J, Email from Juanita Lasprilla, MSSW, Esq., on behalf of COA, to Michael Goldstein, Esq., dated March 16, 2018.)

The March 16 Notice imposed the following adverse actions.  First, COA suspended Plaintiff until he took corrective actions that met an AAE's approval, but in no event less than ten days.  During the suspension, Plaintiff was to stop providing adoption services in all Convention and non-Convention cases, except as it related to any required corrective action. (*See* March 16 Notice at 1.)  Second, Plaintiff was specifically advised that he was "not required to transfer its cases to another provider," though COA reserved the right to direct the transfer of his pending cases if circumstances later warranted it.  (*Id.*)  Third, Plaintiff was informed that he "may elect and prospective adoptive parents should be given the option to transfer cases in order to minimize any disruptions to adoptions in process."  (*Id.*)  Fourth, Plaintiff was advised that in accordance with 22 C.F.R. § 96.77, "COA will notify the [State Department] and all appropriate licensing and other governmental offices of this adverse action."  (*Id.*)  Fifth, Plaintiff was required to provide COA with a current list of contact information for all the domestic and foreign authorities for all his adoption clients.  (*Id.* at 1-2.)  Sixth, Plaintiff was directed to (a) send COA confirmation that he had notified his (i) board members, employees, and volunteers of the suspension, and (ii) clients of the suspension along with "specific information indicating how the adverse action will impact their adoption," and (b) provide to COA a list of his cases that would require "adoption services" during his suspension as well as Plaintiff's plans regarding those cases.  (*Id.* at 2.)  Seventh, and finally, Plaintiff was instructed to provide evidence of completed corrective action to COA.  (*Id.*)[3]

The adverse action was to initially take effect on February 23, 2018.  (*See* February 7 Notice at 1.)  After Plaintiff requested reconsideration of the adverse action by COA, however,

---

[3]    Once Plaintiff believes he is in compliance with all regulations, the AAE will review the corrective actions. (Klarberg Decl. ¶ 40.)  If the AAE finds Plaintiff is still not in compliance, it will provide feedback until Plaintiff comes into compliance.  (*Id.*)

the effective date of the adverse action was delayed to March 21, 2018.  (*See* March 16 Notice

at 1.)  The proposed adverse action has been postponed pending the outcome of the OTSC.

(Klarberg Decl. ¶ 41.)

## III.    THE INSTANT ACTION

Plaintiff commenced this action on March 20, 2018, with the filing of his Complaint.  By

his Complaint, Plaintiff seeks an order setting aside COA's adverse action pursuant to 42 U.S.C.

§ 14922(c)(3); injunctive relief barring any suspension of Plaintiff's Hague approval; and a

declaratory judgment that COA's conclusions were arbitrary and capricious and that Plaintiff

was in compliance with all regulations.  (*See* Compl. at 28-30.)  Plaintiff also seeks damages

based on an alleged violation of his due process rights.  (See *id.* at 30.)

## LEGAL ARGUMENTS

## I.    STANDARD OF REVIEW

In the Second Circuit, a party seeking an injunction must show "(a) irreparable harm and

(b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the

merits to make them fair ground for litigation and a balance of hardships tipping decidedly

toward the party requesting the preliminary relief."  *Citigroup Global Markets, Inc. v. VCG

Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation

marks omitted).  Here, Plaintiff cannot show an irreparable harm or a likelihood of success on

the merits.  Further, a balance of the equities tips in COA's favor, not Plaintiff's.  Plaintiff's

application should therefore be denied.

## II.    PLAINTIFF CANNOT DEMONSTRATE IRREPARABLE HARM

As "[i]rreparable harm is the single most important prerequisite for the issuance of a

preliminary injunction, . . . the moving party must first demonstrate that such injury is likely

before the other requirements for the issuance of an injunction will be considered."  *Grand River*

*Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007).  In the context of a preliminary injunction, "irreparable harm" means "certain and imminent harm for which a monetary award does not adequately compensate."  *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003).  As Plaintiff observes in his brief, "[t]o demonstrate irreparable harm in the absence of an injunction, a plaintiff must show the injury is actual and imminent, and not remote or speculative."  (Pl. Br. at 6 (citing *Smolen v. Dildine*, 2011 WL 6030112, at *2 (W.D.N.Y. Dec. 5, 2011)).)  *See also Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) (same).

Plaintiff suggests three bases for irreparable harm: (1) he will have to cease all adoption operations, including adoptions in process; (2) any public announcement of his suspension will injure his business and professional reputation; and (3) following his suspension, he *may* have to undergo recertification in other countries.  None of these arguments provide a sufficient basis to support a finding of irreparable harm.

First, Plaintiff asserts that COA's actions would require him to "cease all adoption operations in Hague Convention countries."  (Pl. Br. at 7.)  Plaintiff frames this argument as though he is precluded from ever providing intercountry adoption services again.  This implication is wrong and contrary to the express terms of the adverse action notice.  COA's imposed suspension does not require Plaintiff to stop working on all adoptions for all time.  Rather he must only cease providing services for the duration of the suspension, which may only last ten days if Plaintiff satisfactorily corrects the deficiencies.

Moreover, even during his suspension, "[Plaintiff] is not required to transfer [his] cases to another provider," (March 16 Notice at 1), and following the suspension, Plaintiff can resume his adoption activities.  Further, a ten-day delay during Plaintiff's suspension is unlikely to cause

13

significant delays for Plaintiff's clients, and if there are time-sensitive matters, Plaintiff can transfer a client, even temporarily, to another accredited or approved ASP.  (Klarberg Decl. ¶ 9.)

Second, Plaintiff asserts that his "reputation and business will be damaged irreparably" by the public announcement of his suspension, and there will be no way for him to reverse this damage.  (*See* Pl. Br. at 7.)  This argument is belied by the fact that Plaintiff was previously suspended and information about that suspension is publicly available.  (Klarberg Decl., Ex. C at 246-47; Cepler Decl. ¶¶ 2-3.)  While Plaintiff may be concerned about the effect of this second suspension on his record, it is entirely speculative to conclude that a second suspension will cause irreparable harm to his business reputation when information about the first suspension is already publicly available.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a *possibility of irreparable harm* is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (emphasis added).  Accordingly, the Court cannot, as a matter of law, conclude that the instant suspension will create irreparable harm.

Third, Plaintiff asserts that the Convention countries in which he provides adoption services "may . . . require Plaintiff to undergo another approval process to continue performing these services" because of the suspension.  (*See* Pl. Br. at 7.)  Plaintiff cites no statute – American or foreign – or any case law to support this assertion.  Nor has he explained how a country requiring him to undergo recertification would cause him irreparable harm.  Therefore, the fact that Plaintiff *may* be required to undergo recertification is too speculative to support a finding of irreparable harm.  *See Winter*, 555 U.S. at 22.  Accordingly, Plaintiff cannot demonstrate irreparable harm, and the OTSC should be denied on this basis alone.

**III.**   **PLAINTIFF CANNOT SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS**

Next, even if Plaintiff could show irreparable harm – and he cannot – he is still unable to show a likelihood of success on the merits.

An ASP that is subject to an adverse action "may petition the United States district court in the judicial district in which the agency is located or the person resides to set aside the adverse action." 42 U.S.C. § 14922(c)(3).  The court's review is then pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (the "APA").  Under the APA, the court shall only "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.  Thus, "[j]udicial review of agency action is deferential and its scope narrow." *Ass'n of Proprietary Colleges v. Duncan*, 107 F. Supp. 3d 332, 363 (S.D.N.Y. 2015).  The party challenging the agency action bears the burden of proof.  *See Boatmen v. Gutierrez*, 429 F. Supp. 2d 543, 548 (E.D.N.Y. 2006).

In applying its deferential review, the court is constrained to only consider if "there has been a clear error of judgment." *Bechtel v. Admin. Review Bd.,* 710 F.3d 443, 446 (2d Cir. 2013).  Therefore, "a court must be reluctant to reverse results supported by a weight of considered and carefully articulated expert opinion." *Cty. Of Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 802 F.3d 413, 431 (2d Cir. 2015) (citation omitted).

Plaintiff argues, without citing any precedent, that he will likely succeed on the merits of his claims because the Alam case does not reflect his usual practices and was therefore an "anomaly." (Pl. Br. at 8-11.)  The Court should reject Plaintiff's unsupported assertions of likelihood of success on the merits for five reasons:

First, Plaintiff admits that he violated the identified regulations for which the adverse action was imposed.  He does not deny that he did not develop or implement appropriate service plans for the Alams.  Further, in his Declaration, Plaintiff acknowledged he failed to

15

communicate with the Bangladeshi service providers, including the orphanage (Pl. Br. at 9-10; Decl. ¶ 15), and that he failed to obtain the necessary medical and social information.  (Pl. Br. at 10; Decl. ¶ 17.)  Finally, Plaintiff concedes he failed to monitor, oversee or vet the Bangladeshi orphanage, or communicate with the Bangladeshi attorney.  (Decl. ¶ 15.)  Given that Plaintiff does not even challenge the findings against him, he will not be able to succeed on the merits of the claim that COA's actions were arbitrary or capricious.  *See Banks v. Yokemick*, 214 F. Supp. 2d 401, 413 (S.D.N.Y. 2002) (decision is not arbitrary or capricious when supported by facts in the record).

Second, Plaintiff had a fair opportunity to challenge the suspension, as COA's investigation and adverse action complied with all relevant regulations and principles: Plaintiff was involved in the investigation and then, after COA reached a preliminary decision, given an opportunity to respond.  (Klarberg Decl. ¶ 33.)  Following his response, COA issued the adverse action.  *See* 22 C.F.R. § 96.76.  Therefore, Plaintiff will not succeed on any claim of violations of his procedural due process.

Third, Plaintiff's arguments that the Alams took advantage of him or that this case was anomalous are irrelevant.  (*See* Pl. Br. at 9.)  Plaintiff had no obligation to continue representing a client if he could not do so in compliance with the relevant regulations.  (Klarberg Decl. ¶ 35.)  Instead, if Plaintiff could not, because of the circumstances of the case, comply with the regulations, he (like all other ASPs) should have withdrawn from his representation.  (*Id.*)  Further, nothing in the regulations requires a pattern of conduct prior to the accrediting entity imposing an adverse action; one violation is sufficient to warrant an adverse action.  *See* 22 C.F.R. § 96.75 ("The accrediting entity must take adverse action when it determines that an accredited agency or approved person may not maintain accreditation or approval as provided in

§ 96.27.").  Finally, the State Department has instructed COA to impose adverse actions even

when an ASP has taken corrective action and rectified the identified deficiencies before the

adverse action takes effect.  (Klarberg Decl. ¶ 11.)  Therefore, the Alams' alleged involvement in

the adoption process and the fact that this case may have been unique does not warrant

overturning the suspension.[4]

      Fourth, COA's decision to suspend Plaintiff for ten days followed an investigation and its

own expert evaluation of the facts and determination of an appropriate adverse action.  COA is

an agency charged with ensuring Plaintiff's compliance with the Acts and related regulations.

(*Id.* ¶ 7.)  It is intimately familiar with the statutory and regulatory schemes and understands how

this framework works with respect to international adoptions, and it concluded that Plaintiff's

conduct was not in compliance, especially given Plaintiff's *own* concessions about the violations.

(*Id.* ¶ 36.)  Further, based on its experience as an AAE and its knowledge of the relevant

regulations and the Manual, COA determined the appropriate adverse action to impose on

Plaintiff based on his violations of the regulations.  (*Id.* ¶ 37.)  Therefore, COA's conclusions are

supported by the weight of the evidence, and the Court should defer to COA's investigation of

Alam's allegations and COA's decision to impose the adverse action.  *See Fed. Power Comm'n

v. Fla. Power & Light Co.*, 404 U.S. 453, 463 (1972) ("A court must be reluctant to reverse

results supported by such a weight of considered and carefully articulated expert opinion.");

*Fund for Animals v. Kempthorne*, 538 F.3d 124, 132 (2d Cir. 2008) (same).

      Fifth, and finally, Plaintiff does not even attempt to show that the adverse action was

disproportionate to other adverse action determinations by COA.  *See Nat. Res. Def. Council v.*

---

[4]    Similarly irrelevant is Plaintiff's argument that while COA was investigating Alam's complaints, it also recertified Plaintiff as an ASP.  The investigation was separate and apart from the recertification process, different procedures applied to each task and different personnel at COA worked on each matter.  (Klarberg Decl. ¶ 12.)

*U.S. Nuclear Regulatory Comm'n*, 879 F.3d 1202, 1214 (D.C. Cir. 2018) (an agency's actions are arbitrary and capricious when they are inconsistent); *Troy Corp. v. Browner*, 120 F.3d 277, 281 (D.C. Cir. 1997) ("[W]e must determine whether the agency has complied with the APA; specifically, whether its actions have been arbitrary or capricious, including whether it has acted consistently with its own procedures; and whether its applications of its governing law have been reasonable.").  In fact, COA's actions in this case were entirely consistent with adverse actions handed down by it in other cases with similar conduct.  (Klarberg Decl. ¶ 32; Manual at 46 (failure to comply with 22 C.F.R. §§ 94.46, 94.49 are grounds for cancellation or suspension of approval).)

Accordingly, given the deferential review under the APA and the consistency of COA's decisions with respect to similar violations, there is no basis for the Court to conclude COA's actions were arbitrary or capricious or otherwise warrant reversal under the APA.  Plaintiff, thus, cannot show that he has a likelihood of success on the merits of his claims.

## IV.  <u>THE EQUITIES DO NOT TIP IN FAVOR OF PLAINTIFF</u>

Finally, the equities do *not* weigh in favor of Plaintiff in this case.  Plaintiff asserts that the equities militate in favor of a preliminary injunction because the adverse action is based solely on a Bangladeshi adoption, a country in which Plaintiff had no prior experience, and the allegations occurred almost two years ago.  (*See* Pl. Br. at 11-12.)  Further, Plaintiff contends he is now in full compliance with the regulations.  (*Id.*)  Finally, Plaintiff asserts COA will not suffer any damages from a preliminary injunction.  (*Id.* at 12.)  Each argument should be rejected.

<u>First</u>, these arguments are premised entirely on the assertion that Plaintiff is likely to succeed on the merits, and for the reasons explained above, that is not the case.

Second, Plaintiff's contention that this case was *sui generis* given the role of the Alams in the process and that it involved a Bangladeshi adoption are irrelevant to the balance of equities. The law and the applicable regulations do not countenance immunity from punishment for one who violates a regulation because he was in an unfamiliar situation. *See* 22 C.F.R. § 96.75.

Third, Plaintiff argues that the facts that it took almost two years for COA to complete its review of Alam's complaints and that in the interim Plaintiff's approval was renewed somehow weigh in favor of injunctive relief in this case. This is simply not true. Contrary to Plaintiff's claims, COA did not take adverse action against Plaintiff arbitrarily. Rather, COA conducted a thorough review into the allegations contained in Alam's complaints, including communications with Alam and Plaintiff. (Compliance Review Report at 2.) The nature of the ethical violations that were substantiated are of such consequence as to require that the public be notified immediately in accordance with the applicable regulatory framework. *See* 22 C.F.R. § 96.75.

Fourth, COA, together with the public, will indeed be harmed by a preliminary injunction. Staying the effect of COA's decision in this case will limit every AAE's statutory ability to enforce standards for ASPs permitted to provide adoption services under the Acts and the regulations implementing them. Further, there is a public interest in having those who look to AAEs to receive prompt and accurate information regarding the suitability of ASPs, including Plaintiff, to provide adoption services consistent with federal law and the Convention's principles of advancing the best interests of children and preventing the abduction, the sale of, or the trafficking in children. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) (preventing future consumers from being misled serves the public interest); *Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n*, 2012 WL 137851, at *20 (E.D. Tenn. Jan. 18, 2012) (public interest weighed against injunctive relief preventing ABA

from notifying public of denial of provisional approval of law school's accreditation).  Stated simply, the public relies on AAEs to oversee ASPs.  If AAEs are not permitted to take adverse actions when appropriate, the public will not be properly advised of the operations of ASPs and may lose trust in the Acts and the process of validating an ASP's compliance therewith.

This concern is magnified by two facts.  One, Plaintiff continues to operate even though he has open violations that have not been corrected, despite his claims to the contrary.  (*See* Klarberg Decl., Ex. J.)  Two, COA found that Plaintiff was not in compliance with 22 C.F.R. § 96.49, a regulation addressing an ASP's obligation to obtain medical and social information about a child.  Plaintiff's breach of this regulation puts children at risk of not receiving appropriate medical care and is a significant risk factor in adoptive parents dissolving an adoption if the child has more significant medical needs than what the parents were prepared to be able to provide for.  (*Id.* ¶ 31.)  Therefore, the public, including prospective adoptive parents and children, remains at risk of facing the effects of Plaintiff's actions.  Accordingly, the equities support a denial of Plaintiff's request for a preliminary injunction and allowing the adverse action against Plaintiff to proceed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Order to Show Cause for a preliminary injunction should be denied.

Dated:  April 10, 2018
        White Plains, New York

                YANKWITT LLP

By: _____
                Russell M. Yankwitt
                Craig M. Cepler
                140 Grand Street, Suite 705
                White Plains, NY 10601
                Tel.:  (914) 686-1500
                russell@yankwitt.com
                craig@yankwitt.com
                *Attorneys for Defendants*